IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SECURITY USA SERVICES, INC.,

    Plaintiff,

v.

                                                                                   No. 1:18-cv-00264-JCH-KRS

UNITED PARCEL SERVICE, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

       This case presents the question of whether the Carmack Amendment to the Interstate Commerce Act (ICA), 49 U.S.C. § 14706, a federal law regulating the interstate transportation of goods, preempts a state law cause of action for bad-faith. Plaintiff Security USA Services, Inc., sued Defendant United Parcel Service Inc., in New Mexico state court for recovery of damages after Plaintiff's goods were damaged while being shipped from New Mexico to Texas, asserting state law causes of action for breach-of-contract and bad-faith refusal to pay for damage to Plaintiff's goods. After removal to this Court under the ICA, Plaintiff amended its complaint to substitute its breach-of-contract claim for a federal cause of action, but maintained its state bad-faith claim. Defendant moved to dismiss the bad-faith claim, arguing that the Carmack Amendment completely preempts state causes of action against carriers for damaged interstate shipments.[1] Plaintiff responded that its bad-faith claim is not based on interstate shipments, but on Defendant's poor dealings in handling Plaintiff's claims, and thus not within the scope of Carmack Amendment preemption. The Court, after considering the motion and the parties'

---

[1] *See* Defendant's Partial Motion to Dismiss Count II in Plaintiff's First Amended Complaint and Memorandum in Support [ECF No. 25] and Defendant's Request for Judicial Notice in Support of its Motion to Dismiss [ECF No. 26].

arguments, holds that the Carmack Amendment preempts Plaintiff's state cause of action for bad-faith, and thus grants Defendant's motion to dismiss Count II. The Court additionally grants Defendant's motion for request for judicial notice of a document titled "2017 UPS Tariff/Terms and Conditions of Service – United States" (UPS Tariff/Terms) because that document governs the interstate shipment contract between the parties and is central to Plaintiff's complaint and because Plaintiff did not oppose Defendant's request for judicial notice.[2]

## I. BACKGROUND

Plaintiff's First Amended Complaint and the UPS Tariff/Terms, viewed in the light most favorable to Plaintiff, shows the following. On September 18, 2017 Plaintiff and Defendant entered into a shipping contract, commonly referred to as a "bill of laden," for Defendant to transport two of Plaintiff's boxes to a security convention in Dallas, Texas. The convention was scheduled to begin in eight-days, or on September 26th. Plaintiff selected the three-day option on the shipping contract so that the packages would arrive in Dallas on September 21. The combined total value of the shipped items was $13,500 and Plaintiff paid $528.14 in shipping fees. Defendant insured the packages.[3]

---

[2] *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (in ruling on a Rule 12(b)(6) motion a court can consider documents "incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice.").

[3] Defendant acknowledges that a shipping contract existed between the parties, but Defendant strenuously argues that a contract for insurance did not. Plaintiff alleges that Defendant "act[ed] as its own insurer." Pl.'s First Am. Compl., ECF No. 21 at ¶ 28. Defendant refutes this, saying that Plaintiff merely declared a value of $13,500 for its two packages, but that such a declaration of value does not itself constitute a separate insurance contract. In support, Defendant points to the UPS Tariff/Terms, which state that "[s]hippers desiring cargo insurance … should purchase such insurance from a third party." UPS Tariff/Terms, Ex. A, 32, ECF No. 27-1. In ruling on a motion to dismiss, the Court must draw all reasonable inferences in Plaintiff's favor as the non-movant. Admittedly, Plaintiff's factual allegations concerning the existence of a contract for insurance are unclear from Plaintiff's complaint. However, for purposes of deciding this motion to dismiss, it is largely irrelevant whether the parties had an insurance contract because as the

On September 21, only one of the two packages arrived in Texas. It was damaged. When Plaintiff contacted Defendant to find out what happened to the other package, Plaintiff was met with responses like "it's on the way," and "we will get back to you." Pl.'s First Am. Compl. at ¶ 6. On September 24, two days before the convention was set to begin, a representative of Plaintiff visited the UPS office in Fort Worth because online tracking indicated that Fort Worth was the missing package's last destination. According to the Fort Worth office's records, however, the missing package never left Albuquerque.

Defendant opened an investigation, and Plaintiff went to the UPS office in Albuquerque to find the missing package. The Albuquerque office was uncooperative, and employees said that because UPS had already opened an investigation there was nothing the office could do to help Plaintiff. At this point, the security convention was a mere 24-hours away. Plaintiff therefore spent $11,080 to repurchase the contents of the missing package - which consisted of two laptop computers, one monitor, two cameras, two gateways, four sensors, one rack, two switches, KABA display door locks, catalogs, stands, and display booth items. Plaintiff also rebuilt a missing computer server. Plaintiff decided to pay an employee to drive these items in a van to Dallas, paying for that employee's travel and lodging costs over two days.

On September 25, 2017, UPS showed up at Plaintiff's office, tossed the missing box on the lobby floor, and left without apology or an explanation. The box was torn apart and the smaller boxes within it were ripped open, the contents vandalized. According to Plaintiff, UPS employees purposefully did not scan the box, because their plan all along was to steal the contents within. Once employees realized the items had little commercial use, the employees

---

Court will explain below, Plaintiff's state cause of action for bad-faith is preempted by federal law and Plaintiff could not bring such a claim even if the parties did have a contract for insurance.

vandalized the contents. To make matters worse, Plaintiff's van that it dispatched to Dallas was broken into and $3,000 worth of tools were stolen. Plaintiff alleges that because of Defendant's and its employees' actions, Plaintiff spent over $10,000 "in replacing equipment, staff time and damages and losses to the vehicle in Dallas." Pl.'s First Am. Compl. at ¶ 19.

On January 10, 2018, Plaintiff filed an action against Defendant in New Mexico state court, asserting one claim for breach-of-contract and another for bad-faith refusal to pay on Plaintiff's claim. *See* Def.'s Notice of Removal, ECF No. 1-1. After removal, Plaintiff amended its complaint to substitute its state law breach-of-contract claim for an analogous federal cause of action under the Carmack Amendment for the damage that Defendant caused to Plaintiff's goods (Count I). In Plaintiff's Carmack claim, Plaintiff alleges that Defendant breached the shipping agreement "by failing to transport the two packages … under the bill of laden … in good order and condition…" and to "pay for the damages" such that Defendant is liable for direct and consequential damages. Pl.'s First Am. Compl. at ¶¶ 21-22. In Count II, Plaintiff's claim for bad-faith, Plaintiff maintains that Defendant refused to pay for Plaintiff's damages agreed to and completed under the shipping contract, and that Defendant had no legitimate reason to refuse to pay for Plaintiff's valid insurer claim. *See id*. at ¶¶ 27-28.

On July 11, 2018, Defendant moved to dismiss Count II only, arguing that the Carmack Amendment completely preempts Plaintiff's state claim for bad-faith. In its response brief to Defendant's motion to dismiss, Plaintiff requested leave to amend its complaint, again, to add state law statutory violations of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1 *et seq.* and Unfair Insurance's Practices Act, N.M. Stat. Ann. § 59A-16-1 *et seq*. on the belief that Defendant misrepresented to Plaintiff the extent of its liability as a purported insurer. *See* Pl.'s Resp. Br., ECF No. 30, 6.

## II. STANDARD OF REVIEW

Defendant moves to dismiss Count II under Fed. R. Civ. P. 12(b)(6). To establish a claim for relief, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Determining whether a complaint contains well-pleaded facts sufficient to state a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. Though a complaint need not provide "detailed factual allegations," it must give just enough factual detail to provide "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotations and citations omitted). "If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim." *Id.* (quotations and citations omitted). A reviewing court "accept[s] as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to [the non-movant]." *Sanchez v. United States Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017).

## III. DISCUSSION

Congress enacted the Carmack Amendment to establish uniformity and consistency among states in the application and resolution of interstate shipping loss and damage cases. An excellent description of the Carmack Amendment's purpose, history and operation is set forth in the Court of Appeals for the Third Circuit's case in *Certain Underwriters at Interest at Lloyds of*

*London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335-36 (3d Cir. 2014) which the Court presents below:

> The Carmack Amendment's operation is relatively straightforward. The general rule is that an interstate carrier is strictly liable for damages up to 'the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) [certain intermediary carriers].' 49 U.S.C. § 14706(a)(1). A shipper and carrier can agree to limit the carrier's liability 'to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances' in order for the shipper to obtain a reduced rate. *Id.* § 14706(c)(1)(A). Shippers may bring a federal private cause of action directly under the Carmack Amendment against a carrier for damages. *Id.* § 14706(d).
>
> The Carmack Amendment struck a compromise between shippers and carriers. In exchange for making carriers strictly liable for damage to or loss of goods, carriers obtained a uniform, nationwide scheme of liability, with damages limited to actual loss—or less if the shipper and carrier could agree to a lower declared value of the shipment. *See N.Y., New Haven, & Hartford R.R. v. Nothnagle,* 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1953); *accord* Wesley S. Chused, *The Evolution of Motor Carrier Liability Under the Carmack Amendment into the 21st Century,* 36 Transp. L.J. 177, 210 (2009). Making carriers strictly liable relieved a shipper of the burden of having to determine which carrier damaged or lost its goods (if the shipper's goods were carried by multiple carriers along a route). It also eliminated the shipper's potentially difficult task of proving negligence. *See Sec'y of Agric. v. United States,* 350 U.S. 162, 173, 76 S.Ct. 244, 100 L.Ed. 173 (1956) (Frankfurter, J., concurring). In return, carriers could more easily predict their potential liability without closely studying the tort law of each state through which a shipment might pass. Carriers' liability was limited to the actual value of the goods shipped—punitive damages were not available. *See, e.g., Penn. R.R. v. Int'l Coal Mining Co.,* 230 U.S. 184, 200, 33 S.Ct. 893, 57 L.Ed. 1446 (1913) (noting that 'the act provided for compensation, not punishment').
>
> For over one hundred years, the Supreme Court has consistently held that the Carmack Amendment has completely occupied the field of interstate shipping. 'Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.' *Adams Express,* 226 U.S. at 505–06, 33 S.Ct. 148. The Court has consistently described the Amendment's preemptive force as exceedingly broad—broad enough to embrace 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.' *Ga., Fla. & Ala. Ry. v. Blish Milling Co.,* 241 U.S. 190, 196, 36 S.Ct. 541, 60 L.Ed. 948 (1916).

*Certain Underwriters at Interest at Lloyds of London*, 762 F.3d at 335-36.

The Court of Appeals for the Tenth Circuit has likewise described the Carmack Amendment in "broad, preemptive terms." *Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1116 (10th Cir. 1989). The Tenth Circuit and nine other federal appellate courts have "consistently held that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract [and tort] claims alleging loss or damage to property." *Certain Underwriters at Interest at Lloyds of London*, 762 F.3d at 336. Thus, federal courts have dismissed "nearly all state-law claims regarding loss of or damage to goods in interstate ground shipping as preempted by the Amendment." *Tran Enterprises, LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1008 (5th Cir. 2010) (citing *Moffit v. Bekins Van Lines Co.,* 6 F.3d 305, 306–07 (5th Cir.1993) (Carmack Amendment preempted plaintiff's claims for the tort of outrage, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, breach of implied warranty, breach of express warranty, violation of the Texas Deceptive Trade Practices Act, slander, misrepresentation, fraud, negligence, gross negligence, and violation of common carrier duties under state law)).

However, despite the Carmack Amendment's broad sweep, Supreme Court caselaw "has not clarified the extent to which state law provisions pertaining to the claims process, as opposed to the shipping of goods, are preempted." *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 504–05 (1st Cir. 1997). Accordingly, "Courts of Appeals have identified a peripheral set of state and common law causes of action that are not preempted." *Certain Underwriters at Interest at Lloyds of London*, 762 F.3d at 336. For instance, the Tenth Circuit held that a state's attorney fee statute was not preempted by the Carmack Amendment because the statute was "incidental to" the Carmack Amendment and did not "substantively enlarge the responsibility of the carrier." *A.T.*

*Clayton & Co., Inc. v. Missouri–Kansas–Texas R.R. Co.,* 901 F.2d 833, 835 (10th Cir. 1990). The Court of Appeals for the Seventh Circuit has likewise examined "the line between the types of claims that are preempted and those that are not," *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997), holding that the Carmack Amendment does not preempt "those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce." *Id*. Thus in *Gordon*, the estate of an 80-year old decedent could assert a common law claim for intentional infliction of emotional distress (IIED) stemming from the moving carrier's failure to deliver priceless family heirlooms followed by four-months of deception because the IIED claim was "independent from the loss or damage to goods." *Id*.[4] The precise question then is whether a common law claim for bad-faith fits within the "peripheral set of state and common law causes of action that are not preempted by the Carmack Amendment." *Certain Underwriters at Interest at Lloyds of London*, 762 F.3d at 336.

Arguably, the state bad-faith claim at issue did not arise directly out of damage to goods, but related to Defendant's poor dealings in the claims process. But ultimately Plaintiff's state claim is preempted. Again, preempted state laws are those that "substantively enlarge the responsibility of the carrier." *A.T. Clayton & Co., Inc.,* 901 F.2d at 835. Courts hold that a carrier's responsibility is substantively enlarged if a state law imposes liability on a carrier "stemming from the claims process, and liability related to the payment of claims." *Rini*, 104 F.3d at 506. Thus, in *Rini* the court held that the plaintiff, though "ill-treated in her attempts to settle," could not assert state causes of action for negligence, misrepresentation, and unfair and

---

[4] *But see Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 382-83 (5th Cir. 1998) (lawsuit seeking damages for lost wages and emotional suffering preempted because both resulted directly from the destruction of the plaintiffs' household goods and thus plaintiffs did not allege injuries separate from the loss of their property).

deceptive acts, since those claims were preempted. *See* 104 F.3d at 506-07. And more analogous to this case, the Court of Appeals for the Second Circuit in *Cleveland v. Beltman North American Company,* 30 F.3d 373, 379 (2d Cir. 1994) held that a federal common law claim for breach of an implied covenant of good faith and fair dealing in the claims process was preempted since that claim resulted in a jury verdict of $50,000 in punitive damage award on top of a $28,000 recovery for the damaged goods. In so deciding, the court said that the $50,000 punitive damages award had a "dramatic impact" on the defendant's liability and "seriously enlarge[d] [the plaintiffs'] remedy" such that the award "could well thwart one of the primary purposes of the Carmack Amendment; that is, to provide some uniformity in the disposition of claims brought under a bill of lading." *Id*.

Under New Mexico law, punitive damages are recoverable in bad-faith "failure-to-pay cases," *i.e.* cases "arising from a breach of the insurer's duty to timely investigate, evaluate, or pay an insured's claim in good faith." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 2, 135 N.M. 106, 108, 85 P.3d 230, 232. Applying *Rini* and *Cleveland*, Plaintiff's claim for bad-faith is preempted because it seeks to impose liability on Defendant arising from its conduct in not paying Plaintiff's claim. *See e.g.* Pl.'s Am. Compl. at ¶ 28 (stating that "Defendant had no legitimate or arguable reason for refusing to pay Plaintiff's valid claim" and that Defendant, without reason, refused to consider the nature of Plaintiff's losses and rejected the opportunity to consider Plaintiff's proof of loss). Just as in *Cleveland*, a punitive damage award could dramatically impact Defendant's liability, enlarge Plaintiff's remedy beyond its actual loss, and undermine nationwide uniformity in the resolution of interstate shipping loss and damage cases. The Carmack Amendment extends to and preempts Count II, Plaintiff's common law cause of action for bad-faith.

The Court next addresses Plaintiff's request to amend its complaint to add state law statutory violations of New Mexico's Unfair Practices Act (UPA), N.M. Stat. Ann. § 57-12-1 *et seq*. and Unfair Insurance's Practices Act (UIPA), N.M. Stat. Ann. § 59A-16-1 *et seq*. Federal Rule of Civil Procedure 15(a)(2) provides for liberal amendment of pleadings. Leave should be "freely give[n] … when justice so requires," but leave need not be granted on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, … or futility of amendment." *Duncan v. Manager, Dept. of Safety, City and Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter vs. Prime Equipment Co.*, 451 F.3d. 1196, 1204 (10th Cir. 2006). Plaintiff argues that Defendant, as an insurer, is liable under the UPA and UIPA for misrepresenting its liability limits on the parties' shipping contract. As Plaintiff puts it, Defendant "leads UPS clients to believe that they are purchasing insurance for their shipped packages, automatically insuring each package up to $100.00, and if more insurance is requested, additional payment by the client is required." Pl.'s Resp. Br. at 6.

Plaintiff's request for leave to amend its complaint is denied for two reasons, one procedural and one substantive. As to the procedural aspect, Plaintiff did not include for the Court's review its proposed amendment in violation of D.N.M.LR-Civ. 15.1, leaving the Court without necessary law, facts, and arguments needed to meaningfully analyze whether Plaintiff's request should be granted. Substantively, and perhaps more importantly, federal courts find that analogous claims fall within the scope of Carmack Amendment preemption. For instance, in the First Circuit's case *Rini*, 104 F.3d 502 at 503, the plaintiff recovered damages at trial under various state causes of action, including under a Massachusetts statute governing unfair and deceptive business acts, against a carrier that lost some of her goods and refused to pay for the

loss. The First Circuit reversed the award, holding that the state statutory claims were preempted because they stemmed from the loss of the plaintiff's goods, even though her statutory claims were predicated on the carrier's claims handling process. *Id*. at 506. In the Seventh Circuit's case *Gordon,* 130 F.3d at 285, the plaintiff sued under various statue law causes of action, including for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, fraud in the inducement, and fraud in the claims process. The plaintiff alleged that the carrier committed statutory fraud and deception by procuring an insurance contract without obtaining the decedent's agreement as to her choice of the carrier's liability or giving her an opportunity to choose between two or more levels of liability. *Id*. The Seventh Circuit held that the Carmack Amendment preempted this claim, deferring to the Appellate Court of Illinois' previous determination that the Carmack Amendment preempted a similar claim against a carrier for failing to deliver promised "extra insurance" that the plaintiffs purchased that exceeded the carrier's specified liability. *Id*. at 289 (citing *Nowakowski v. American Red Ball Transit Co.,* 288 Ill. App. 3d 348, 223 Ill. Dec. 708, 680 N.E.2d 441 (1997)).

And in *Margetson v. United Van Lines, Inc.,* 785 F. Supp. 917 (D.N.M. 1991) (Campos J.), this Court found the Carmack Amendment preempted the plaintiff's claims under the New Mexico's UPA even though the carrier did not transport the plaintiff's rare and fragile goods from Dallas to Santa Fe in the manner she specifically contracted for. The plaintiff predicated her statutory claims on the carrier's misrepresentations concerning how it would transport her goods, but the Court noted that because the plaintiff ultimately sought recovery for the damage to her transported goods, the Carmack Amendment preempted such a claim. *Id*. at 921. The Court also described how an award of punitive damages recoverable under the UPA would be inconsistent with the Carmack Amendment's limitation of liability to actual damages. *Id*. at 920-921. Other

11

federal district courts are in accord. *See e.g. Berlanga v. Terrier Transp., Inc.*, 269 F. Supp. 2d 821, 830 (N.D. Tex. 2003).[5] Accordingly, granting Plaintiff leave to amend its complaint to add state statutory violations of the UPA and UIPA would be futile because claims under these provisions as Plaintiff currently alleges them would be preempted.

## IV. CONCLUSION

Because state law causes of action that seek to impose liability on a carrier for events arising from the claims process and payment of claims are preempted by the Carmack Amendment, Plaintiff's state claim for bad-faith refusal to pay is dismissed. In light of this holding, the Court does not address or decide Defendant's alternative arguments that two other sources of federal law – the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 41713(b)(4)(A) and federal common law – independently preempt Count II. Furthermore, Plaintiff's request for leave to amend its complaint is denied for reasons of futility and non-compliance with the local rule governing amendments.

**IT IS THEREFORE ORDERED that** Defendant United Parcel Service, Inc.'s Motion to Dismiss Count II in Plaintiff's First Amended Complaint and Memorandum in support **[ECF No. 25]** and Motion for Request for Judicial Notice in Support of its Motion to Dismiss **[ECF No. 26]** are **GRANTED**.

**IT IS SO ORDERED**.

_____
Judith C. Herrera
United States District Judge

---

[5] *But see N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.,* 89 F.3d 452, 458 (7th Cir. 1996) (suggesting that carriers could be liable to shippers under a state statute prohibiting deceptive trade practices where, for example, the carrier fails to provide the shipper with information required by state law.). Here, Plaintiff has not alleged that Defendant failed to provide it with legally required information.